# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| B.E. CAPITAL MANAGEMENT FUND LP, on behalf of itself and all others similarly situated,<br><br>   Plaintiff,<br><br>v.<br><br>FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC. and THE DEPOSITORY TRUST COMPANY,<br><br>   Defendants. | Case No. 17-00311 (GMS) |

## DEFENDANT FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.'S
## OPENING BRIEF IN SUPPORT OF THE MOTION TO DISMISS

Of Counsel:

Douglas W. Henkin
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, New York 10112-4498
(212) 408-2520
douglas.henkin@bakerbotts.com

J. Mark Little
BAKER BOTTS L.L.P.
One Shell Plaza
910 Louisiana Street
Houston, TX  77002-4992
(713) 229-1489
mark.little@bakerbotts.com

Dated:  April 25, 2017

HEYMAN ENERIO
GATTUSO & HIRZEL LLP
Dominick T. Gattuso (# 3630)
300 Delaware Ave., Suite 200
Wilmington, DE 19801
(302) 472-7300
Email:  dgattuso@hegh.law

*Attorneys for Defendant*
*Financial Industry Regulatory Authority, Inc.*

TABLE OF CONTENTS

Nature and Stage of the Proceedings ............................................................................................... 1

Summary of Argument .................................................................................................................... 1

Statement of Facts ............................................................................................................................ 2

    A.    The Debtor's Bankruptcy Was Unusual—Its Stock Continued to Trade During the Bankruptcy and Shareholders Will Receive Distributions .................... 2

    B.    The Debtor's Plan of Liquidation Provides For Distributions to Equity of Uncertain Amounts at Uncertain Times After Plan Confirmation ......................... 2

    C.    FINRA Publicly Announced That Its Rules Did Not Allow It To Set An Ex-Dividend Date For the Debtor's Distributions ......................................................... 4

    D.    The Bankruptcy Court Confirmed the Plan of Liquidation, Canceled All Equity Interests in the Debtor, and the Liquidating Trustee Made a Distribution Pursuant to the Plan's Provisions ....................................................... 6

    E.    B.E. Capital Files This Action Seeking to Force FINRA to Set an Ex-Dividend Date For Future Distributions ............................................................... 6

ARGUMENT .................................................................................................................................... 6

    I.    B.E. Capital's Claim Against FINRA is Moot and Precluded By the Plan .......... 6

    II.    SRO Immunity Bars B.E. Capital's Claim Against FINRA ................................ 9

    III.    There Is No Private Right of Action To Force FINRA to Comply With Its Rules, And In Any Event FINRA Correctly Applied Rule 11140(b) Here .................... 11

Conclusion ..................................................................................................................................... 13

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*D'Alessio v. NYSE*,
   258 F.3d 93 (2d Cir. 2001)..................................................................................................9, 10

*Desiderio v. NASD*,
   191 F.3d 198 (2d Cir. 1999)....................................................................................................12

*Dexter v. Depository Trust & Clearing Corp.*,
   406 F. Supp. 2d 260 (S.D.N.Y. 2005), *aff'd*, 219 Fed. App'x 91 (2d Cir. 2007)..............10, 11

*In re DNIB Unwind, Inc.*,
   No. 16-11084 (Bankr. D. Del.) ..............................................................................................2, 3

*In re Layo*,
   460 F.3d 289 (2d Cir. 2006)......................................................................................................9

*In re NYSE Specialists Sec. Litig.*,
   503 F.3d 89 (2d Cir. 2007)..................................................................................................9, 10

*In re Olick*,
   No. 99-CV-5128, 2000 WL 354191 (E.D. Pa. Apr. 4, 2000) ...................................................9

*In re Series 7 Broker Qualification Exam Scoring Litig.*,
   548 F.3d 110 (D.C. Cir. 2008) ............................................................................................9, 12

*In re Tribune Media Co.*,
   799 F.3d 272 (3d Cir. 2015), *cert. denied sub nom. Aurelius Capital Mgmt.,
   L.P. v. Tribune Media Co.*, 136 S. Ct. 1459 (2016) ..................................................................7

*Lobaito v. FINRA*,
   No. 13 Civ. 6011, 2014 WL 4470423 (S.D.N.Y. Sept. 9, 2014), *aff'd sub nom.
   Lobaito, Jr. v. FINRA*, 599 Fed. App'x 400 (2d Cir. 2015).....................................................12

*MM&S Fin. v. NASD*,
   364 F.3d 908 (8th Cir. 2004) ..................................................................................................12

*PennMont Sec. v. Frucher*,
   534 F. Supp. 2d 538 (E.D. Pa. 2008), *vacated on other grounds*, 586 F.3d 242
   (3d Cir. 2009)............................................................................................................................9

**STATUTES AND RULES**

15 U.S.C. § 78s(g)(1) ...................................................................................................................13

Fed. R. Bankr. P. 8002(a)(1) ..........................................................................................................6

Fed. R. Civ. P. 12(b)(1) ...........................................................................................................1, 13

Fed. R. Civ. P. 12(b)(6) ...........................................................................................................1, 13

FINRA Rule 11100(a) .............................................................................................................8, 13

FINRA Rule 11140 .................................................................................................................4, 11

Defendant Financial Industry Regulatory Authority, Inc. ("FINRA") respectfully submits this opening brief in support of its motion to dismiss the claim against it with prejudice pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff B.E. Capital Management Fund L.P. ("B.E. Capital") purports to assert a single claim against FINRA relating to the setting of an ex-dividend date for shares of BIND Therapeutics (the "Debtor"). FINRA files this pre-answer motion to dismiss that claim (the only claim asserted against FINRA) with prejudice.

## SUMMARY OF ARGUMENT

B.E. Capital's claim suffers from a number of fatal flaws:

- B.E. Capital's claim against FINRA is moot and precluded by the confirmed plan. B.E. Capital is complaining about the payment of distributions of an entity now governed by a confirmed and un-appealed bankruptcy plan. That plan canceled the shares at issue when it was confirmed, there was no appeal, and the plan is thus now final. Thus, FINRA *cannot* set an ex-dividend date under its rules because the shares no longer exist, and its earlier decision not to set an ex-dividend date cannot be challenged.

- As a self-regulatory organization ("SRO") registered with the Securities and Exchange Commission ("SEC"), FINRA is immune from suit relating to actions taken pursuant to its regulatory authority, including whether and how to set ex-dividend dates. That immunity bars B.E. Capital's claim against FINRA.

- There is no private right of action to force FINRA to comply with its own rules for setting an ex-dividend date, and in any event the record shows that FINRA correctly applied its rules here.

B.E. Capital's claim against FINRA thus fails for multiple reasons, none of which are fixable. The Court should thus dismiss the claim against FINRA with prejudice, as none of the deficiencies in its claim against FINRA can be cured through amendment.

## STATEMENT OF FACTS

**A.     The Debtor's Bankruptcy Was Unusual—Its Stock Continued to Trade During the Bankruptcy and Shareholders Will Receive Distributions**

The Debtor filed a voluntary Chapter 11 bankruptcy petition on May 1, 2016. *See* Bankr. D.I. 1, *In re DNIB Unwind, Inc.*, No. 16-11084 (Bankr. D. Del.).[1] A few months later, Pfizer, Inc. reached an agreement with the Debtor to purchase substantially all of the Debtor's assets. Bankr. D.I. 313. The bankruptcy court approved the asset sale on July 27, 2016. *See id.*

Because the asset sale resulted in the Debtor's assets being greater than its liabilities, the Debtor's shareholders were told that they would receive distributions as the Debtor liquidated, although the timing and amount of those distributions was uncertain. On August 1, 2016, as a reflection of the fact that the Debtor's equity had some value, the Debtor changed its name from BIND Therapeutics to DNIB Unwind, Inc. *See* Certificate of Amendment of Restated Certificate of Incorporation of BIND Therapeutics, Inc. (attached as Exhibit A). On that same day, the Debtor's stock was delisted from NASDAQ, where it had been trading under the symbol BIND, and it began to trade in the over-the-counter market under the new symbol BINDQ. *See* Compl. ¶ 4; FINRA 7/29/16 BINDQ Daily List Announcement (attached as Exhibit B).

**B.     The Debtor's Plan of Liquidation Provides For Distributions to Equity of Uncertain Amounts at Uncertain Times After Plan Confirmation**

After August 1, 2016, trading in the Debtor's stock was driven by speculation regarding the amount and timing of distributions shareholders would receive as the bankruptcy reached its conclusion. The Debtor's filing of its proposed plan of liquidation on August 15,

---

[1] "Bankr. D.I. x" references are to the documents filed in the Debtor's bankruptcy proceeding, and all page number references for such documents refer to the court-added page numbers in the documents' headers. Similarly, "D.I. x" references are to documents filed in this proceeding.

2

2016 further fueled this speculation. That plan envisioned an initial distribution to shareholders sometime "within ninety (90) days after the Effective Date" of the plan. Bankr. D.I. 354 at 53. The proposed plan clearly stated that the distribution was conditional and could not occur

> until satisfaction in full of all Allowed Administrative Expense Claims, all Allowed Fee Claims, all Priority Tax Claims, all administrative expenses due and owing as of the Initial Equity Distribution Date, all Allowed Class 1 Claims, all Allowed Class 2 Claims, all Allowed Class 4 Claims, all Allowed Class 5 Claims, and, with respect to Class 3 Claims, any and all Class 3 Claims that are Allowed as of the Initial Equity Distribution Date; provided, further, that all Wind-Down Expenses due and owing as of the Initial Equity Distribution Date and all unpaid Fee Claims shall be paid out of, and as part of, the Initial Equity Distribution on the Initial Equity Distribution Date.

*Id.* at 54. Provided that those conditions were met, the first distribution tentatively was to be "in the amount of $8 million," but the proposed plan stated that that number could change depending on "the extent Disputed Claims are resolved, paid, satisfied or reduced by a Final Order of the Bankruptcy Court on or before the Initial Equity Distribution Date." *Id.* The proposed plan specified that the initial distribution (and all future equity distributions) would be paid to the holders of equity interests as of August 30, 2016. *See id.* at 13, 48, 53, 55.

The Debtor's contemporaneous SEC filings confirmed these details of the proposed distribution. Specifically, the Debtor's August 15, 2016 Form 10-Q explained:

> The Plan of Liquidation further provides for an initial cash distribution, within 90 days of the effective date of the Plan of Liquidation, to the Company' stockholders of record on August 30, 2016 in the aggregate amount of $8.0 million (the "Initial Distribution"); provided, however, that the Initial Distribution will not be made until the satisfaction in full of Creditors' Claims and certain other claims entitled to priority under Section 507 of the

3

> Bankruptcy Code, and the payment in full of the Company's professional fees and expenses relating to the Chapter 11 Cases.[2]

The Debtor's August 30, 2016 Form 8-K contained similar language:

> Under the Plan of Liquidation, only stockholders of record as of the close of business on August 30, 2016 (the "Distribution Record Date") are entitled to payment as part of the initial cash distribution or any subsequent cash distribution(s) that may occur pursuant to the Plan of Liquidation. Any person who purportedly purchases or purportedly is transferred the Company's common stock subsequent to the Distribution Record Date will not be entitled to payment as part of the initial cash distribution or any subsequent cash distribution(s) if the Plan of Liquidation is confirmed by the Bankruptcy Court.[3]

### C. FINRA Publicly Announced That Its Rules Did Not Allow It To Set An Ex-Dividend Date For the Debtor's Distributions

The usual procedure when an issuer announces a dividend distribution is for FINRA to set an "ex-dividend date," or "ex-date." That is the date at which the right to receive a dividend is no longer transferred with the stock. For example, if a company announces a dividend payable on January 30 and the ex-date is January 15, then a purchaser who bought shares on January 20 would not be entitled to receive the January 30 dividend. *See generally* NASD Notice to Members 00-54, http://www.finra.org/industry/notices/00-54 (explaining ex-dates).

FINRA sets an ex-date according to specific SEC-approved rules that rely on a number of inputs, including the precise amount and payment date of the dividend. *See* FINRA Rule 11140(b). Specifically, FINRA Rule 11140(b) mandates that FINRA act as follows:

> (1) In respect to cash dividends or distributions, or stock dividends, and the issuance or distribution of warrants, which are less than 25% of the value of the subject security, if the definitive

---

[2] https://www.sec.gov/Archives/edgar/data/1385228/000156459016024432/bind-10q_20160630.htm.

[3] https://www.sec.gov/Archives/edgar/data/1385228/000119312516696989/d244631d8k.htm.

4

> information is received sufficiently in advance of the record date, the date designated as the "ex-dividend date" shall be the second business day preceding the record date if the record date falls on a business day, or the third business day preceding the record date if the record date falls on a day designated by the Committee as a non-delivery date.
>
> (2) In respect to cash dividends or distributions, stock dividends and/or splits, and the distribution of warrants, which are 25% or greater of the value of the subject security, the ex-dividend date shall be the first business day following the payable date.

Accordingly, the precise value of a distribution is an essential input in determining the ex-date, with the key question being whether the distribution is more or less than 25% of the security's total value. The precise date of payment is also needed, as the ex-date for distributions greater than 25% of a security's value is tied to the payment date.

When FINRA applied Rule 11140(b) here, it lacked sufficient information to set an ex-date: The value of the distribution envisioned by the plan was subject to change based on a number of factors, meaning that FINRA could not determine whether the distribution was more or less than 25% of the security's value. Similarly, no specific payment date was specified; the Debtor's disclosures said only that the distribution would take place sometime within 90 days of the proposed plan's confirmation.

After coming to these conclusions, FINRA publicly announced on September 1, 2016 that it would not be setting an ex-date for this distribution and instead referred interested parties to the Debtor's proposed plan of liquidation and SEC filings for guidance: "Distribution & Pay Date TBD. Distribution will not be quoted Ex by FINRA. Please see Bankruptcy Plan, Issuer's SEC filings for additional details." Compl. ¶ 28.

5

### D. The Bankruptcy Court Confirmed the Plan of Liquidation, Canceled All Equity Interests in the Debtor, and the Liquidating Trustee Made a Distribution Pursuant to the Plan's Provisions

The Bankruptcy Court approved an amended—but identical as far as the above-discussed provisions are concerned—plan of liquidation on September 26, 2016, with an effective date of October 11, 2016. *See* Docs. 415, 457, 474. Pursuant to the confirmed plan, all equity interests in the Debtor were canceled as of October 11, 2016. *See* Bankr. D.I. 415 at 48 ("On the Effective Date, all BIND Equity Interests shall be canceled."). FINRA announced that cancellation of the Debtor's shares and removed the BINDQ symbol from trading. FINRA UPC #52-16 (attached as Exhibit C). The time for appeal of the plan confirmation order passed on October 10, 2016 (Fed. R. Bankr. P. 8002(a)(1)); the Bankruptcy Court docket reflects that no timely appeals were filed and implementation of the confirmed plan was not stayed.

On November 23, 2016, the liquidating trustee announced a distribution of $8 million to be paid on December 15, 2016 according to the terms of the plan. Bankr. D.I. 517. The Depository Trust Company then effected that distribution. Compl. ¶ 6.

### E. B.E. Capital Files This Action Seeking to Force FINRA to Set an Ex-Dividend Date For Future Distributions

On March 22, 2017, B.E. Capital filed this action accusing FINRA of violating its rules (specifically Rule 11140(b)) by not setting an ex-date for the initial distribution and seeking a declaration that FINRA is required under its rules to set an ex-date for future distributions.

### ARGUMENT

### I. B.E. Capital's Claim Against FINRA is Moot and Precluded By the Plan

The Debtor's plan of liquidation was confirmed and consummated, and that had two effects. *First*, the Debtor's shares were canceled pursuant to the plan. *Second*, the initial distribution was made in accordance with the plan. Because no one appealed confirmation of the

plan or sought to have its consummation stayed, the relief B.E. Capital seeks would undermine the finality of the plan, which makes the claim against FINRA moot and precludes B.E. Capital from seeking relief inconsistent with the plan.

The doctrine of equitable mootness applies when "grant[ing] the relief requested will undermine the finality and reliability of consummated plans of reorganization." *In re Tribune Media Co.*, 799 F.3d 272, 277 (3d Cir. 2015), *cert. denied sub nom. Aurelius Capital Mgmt., L.P. v. Tribune Media Co.*, 136 S. Ct. 1459 (2016). The equitable mootness analysis proceeds in two steps:

> (1) whether a confirmed plan has been substantially consummated; and
>
> (2) if so, whether granting the relief requested ... will (a) fatally scramble the plan and/or (b) significantly harm third parties who have justifiably relied on plan confirmation.

*Id.* at 278. Both requirements are met here.

*First*, the Debtor's plan has been substantially consummated. Indeed, it has been confirmed, the time to appeal that confirmation has passed, no appeals were taken, and the Debtor's shares were canceled as required by the plan. *See supra* Statement of Facts, Point D. The plan is thus as final as it can possibly be under the law. Additionally, the liquidating trustee has already taken significant steps to effectuate the plan. Most relevant here, the trustee has already made a substantial distribution pursuant to the provisions of the plan. Bankr. D.I. 517. There is thus no question that the first step of the equitable mootness analysis is satisfied here.

*Second*, granting the relief B.E. Capital seeks would both scramble the plan and harm third parties who have relied on it. At this point, the plan is the sole authority on distribution issues. Third parties (including shareholders other than B.E. Capital) have reasonably relied on the plan's distribution provisions, reliance that has only grown stronger

based on the liquidating trustee's initial distribution and the fact that no one took any action to interfere with that distribution. As it stands now, everyone knows exactly how future distributions will be handled—according to the terms of the plan, as illustrated by the liquidating trustee's initial distribution. Upsetting that settled understanding now by allowing B.E. Capital to pursue a claim against FINRA outside the Bankruptcy Court confirmation process would both call the plan into question and harm those who have relied on the plan and the trustee's actions under it.

Moreover, as a result of the plan's confirmation there is literally nothing FINRA can do here. Shares in the Debtor no longer exist because confirmation of the plan canceled them and ended all prior equity interests in the Debtor. Bankr. D.I. 354 at 48; Bankr. D.I. 415 at 48; Bankr. D.I. 457 at 21. Without existing shares, FINRA cannot set an ex-date because FINRA Rule 11100(a) limits FINRA's authority to set ex-dates to "over-the-counter secondary market transactions in securities." FINRA cannot set an ex-date now for shares that no longer exist and no longer trade.

If B.E. Capital had wished to change (or even clarify) the method for determining which parties would receive distributions here, it should have objected to the plan on that basis, appealed its confirmation, and secured a stay of the plan's consummation while that dispute was pending.[4] But because B.E. Capital did none of those things, it cannot seek to upset the settled

---

[4] The issue B.E. Capital seeks to re-litigate here was raised and rejected during the confirmation process: In confirming the plan, the Bankruptcy Court overruled an objection by another investor who argued, as B.E. Capital tries to argue here, that FINRA should have set an ex-date that would have resulted in B.E. Capital sharing in distributions with respect to shares purchased after the Distribution Record Date. *See* Bankr. D.I. 445 at 9:22-16:6 & 18:16-48:22; D.I. 4-12 at 292-94. But B.E. Capital never made this objection to the Bankruptcy Court and never appealed confirmation of the plan, and the confirmed and un-appealed plan thus precludes B.E. Capital's claim.

distribution procedures put in place by the plan and followed by the trustee through this collateral litigation. B.E. Capital's claim against FINRA must thus be dismissed as moot.

These same reasons support a dismissal based on preclusion principles. The plan's provisions govern the distribution procedures, and that plan is the last word on such matters now that is has been confirmed and is final. B.E. Capital's time to contest those procedures passed when the time to appeal the plan expired. The plan's confirmation finally determined those issues, and B.E. Capital cannot seek to re-litigate them in this proceeding. *See In re Layo*, 460 F.3d 289, 292 (2d Cir. 2006).

## II. SRO Immunity Bars B.E. Capital's Claim Against FINRA

As an SRO, FINRA "is absolutely immune from private civil suits complaining of actions taken pursuant to [its] regulatory authority." *PennMont Sec. v. Frucher*, 534 F. Supp. 2d 538, 541 (E.D. Pa. 2008), *vacated on other grounds*, 586 F.3d 242 (3d Cir. 2009); *see also In re Olick*, No. 99-CV-5128, 2000 WL 354191, at *4 (E.D. Pa. Apr. 4, 2000) ("NASD is immune from suit when acting under the aegis of the Exchange Act's delegated authority."). In other words, when an SRO like FINRA engages in "conduct falling within the scope of the SRO's regulatory and general oversight functions" or "conduct consistent with [its] quasi-governmental powers delegated to it," it is "entitled to immunity from suit." *D'Alessio v. NYSE*, 258 F.3d 93, 105-06 (2d Cir. 2001); *see also In re Series 7 Broker Qualification Exam Scoring Litig.*, 548 F.3d 110, 113 (D.C. Cir. 2008) (SRO immunity applies to claims "based on duties arising under the Exchange Act"); *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95-99 (2d Cir. 2007) (discussing SRO immunity).

This case is at the very core of the SRO immunity doctrine. B.E. Capital admits that its claim is based solely on FINRA's performance of its regulatory duties; it even cites the FINRA Rule it claims FINRA violated: "Plaintiff seeks a declaratory judgment that FINRA is

required to set an ex-date for future distribution to shareholders in accordance with Rule 11140(b)." Compl. ¶ 54; *see also id.* ¶ 38 ("FINRA abandoned its responsibility for setting an ex-date ... ."); *id.* ¶ 41 ("[N]othing in the FINRA Rules absolves FINRA from having to set an ex-date under these circumstances ... ."), *id.* ¶ 53 ("An actual case or controversy exists as to whether FINRA is required to set an ex-date for any future distribution by the Liquidating Trustee in accordance with Rule 11140(b) ... ."). B.E. Capital's claim thus directly attacks FINRA's regulatory actions in deciding whether and how its rules mandate that it set an ex-date in a specific situation. There is no question that the conduct about which B.E. Capital complains "fall[s] within the scope of the SRO's regulatory and general oversight functions," and thus FINRA is "entitled to immunity from suit." *D'Alessio*, 258 F.3d 93 at 106.

Indeed, avoiding the sort of regulatory second-guessing B.E. Capital seeks here is why SRO immunity exists. *See NYSE Specialists*, 503 F.3d at 97; *D'Alessio*, 258 F.3d at 105. The purpose of SRO immunity is to give SROs "breathing room to exercise their powers without fear that their discretionary decisions may engender endless litigation," thus becoming "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress in enacting the Exchange Act." *NYSE Specialists*, 503 F.3d at 97 (citation omitted). Immunity is thus "a matter not simply of logic but intense practicality, since, in the absence of such immunity, the [SROs'] exercise of [their] quasi-governmental functions would be unduly hampered by disruptive and recriminatory lawsuits." *D'Alessio*, 258 F.3d at 105 (citation omitted). Applying SRO immunity to bar B.E. Capital's claim thus fulfills the purpose of the doctrine as well.

The precise issue of whether setting ex-dates is covered by SRO immunity has been litigated before, and the case was dismissed because setting ex-dates is immune conduct.

*See Dexter v. Depository Trust & Clearing Corp.*, 406 F. Supp. 2d 260 (S.D.N.Y. 2005), *aff'd*, 219 Fed. App'x 91 (2d Cir. 2007).  In that case, the plaintiff challenged the decision by NASD (FINRA's predecessor) "setting the ex-dividend date for the distribution in question."  *Id.* at 262.  The court recognized that that claim "challenge[d] actions taken by the NASD in the core exercise of its regulatory functions."  *Id.* at 263.  As support for that conclusion, the court cited the very same FINRA rule at issue here, noting that it "specifically authorized [NASD] to set an ex-dividend date for ... securities traded on markets it controlled."  *Id.*  Based on the plain facts and law, the court concluded that SRO immunity barred the plaintiff's claim:  "Because the NASD is immune from any suit based on its exercise of its regulatory functions, all of plaintiff's claims against the NASD must be dismissed ... ."  *Id.* at 264.  The result should be the same here.

Because there is no question that the determinations of whether and how to set an ex-date are incident to the exercise of FINRA's regulatory power, SRO immunity bars B.E. Capital's claim against FINRA.

### III. There Is No Private Right of Action To Force FINRA to Comply With Its Rules, And In Any Event FINRA Correctly Applied Rule 11140(b) Here

B.E. Capital's claim also fails because it is an improper attempt to enforce what B.E. Capital believes should be the result of FINRA's compliance with its rules through a private right of action.  This is plainly what B.E. Capital wants, as its entire case consists of allegations that FINRA violated its ex-date rule regarding the initial distribution and will violate the rule again for future distributions absent judicial action.  Compl. ¶ 38 ("FINRA abandoned its responsibility for setting an ex-date ... ."); *id.* ¶ 41 ("[N]othing in the FINRA Rules absolves FINRA from having to set an ex-date under these circumstances ... ."), *id.* ¶ 53 ("An actual case or controversy exists as to whether FINRA is required to set an ex-date for any future distribution by the Liquidating Trustee in accordance with Rule 11140(b), as FINRA has made

11

clear it believes it is not responsible for setting an ex-date now that the Debtors' shares have been cancelled and have ceased trading."); *id.* ¶ 54 ("Plaintiff seeks a declaratory judgment that FINRA is required to set an ex-date for future distributions to shareholders in accordance with Rule 11140(b).").

The law is clear, however, that no private right of action exists in this scenario: "It is well established ... that no private right of action exists for FINRA's actions taken in furtherance of its regulatory duties, including enforcement of its own rules." *Lobaito v. FINRA*, No. 13 Civ. 6011, 2014 WL 4470423, at *7 (S.D.N.Y. Sept. 9, 2014), *aff'd sub nom. Lobaito, Jr. v. FINRA*, 599 Fed. App'x 400 (2d Cir. 2015); *see also Desiderio v. NASD*, 191 F.3d 198, 208 (2d Cir. 1999) ("[T]here is no private right of action available under the Securities Exchange Act to redress denials of membership in an exchange, or to challenge an exchange's failure to follow its own rules."); *Series 7*, 548 F.3d at 113 ("[P]laintiffs cannot raise a common law complaint against defendants based on duties arising under the Exchange Act."); *MM&S Fin. v. NASD*, 364 F.3d 908, 912 (8th Cir. 2004) ("[A]llowing [the plaintiff] to assert a private breach of contract claim would vitiate Congress's intent not to allow private rights of action against self-regulatory organizations for violating [their] own rules."). B.E. Capital's claim against FINRA must thus be dismissed as an improper attempt to enforce FINRA's compliance with B.E. Capital's interpretation of FINRA's rules through a private action.

Moreover, the central tenet of B.E. Capital's claim—that "FINRA is required to set an ex-date for future distributions to shareholders in accordance with Rule 11140(b)" (Compl. ¶ 54)—is wrong. As demonstrated above, FINRA made the only decision consistent with its rules when it announced that it would not set an ex-date for the initial distribution. Under Rule 11140(b), FINRA cannot set an ex-date unless an issuer specifies both the precise amount and

payment date of the distribution, and the Debtor's disclosures did neither.  *See* Bankr. D.I. 354 at 53-54.  *Setting* an ex-date in those circumstances would have violated Rule 11140(b), and FINRA thus correctly refused to do so.  *See supra* Statement of Facts, Point C.

Not only was FINRA's past decision a correct application of Rule 11140(b), the Bankruptcy Court's confirmation of the plan has made it impossible for FINRA to set an ex-date because that plan canceled all equity interests in the debtor.  Bankr. D.I. 354 at 48; Bankr. D.I. 415 at 48; Bankr. D.I. 457 at 21.  There are no more shares, and FINRA thus cannot set an ex-date for distributions.  *See* FINRA Rule 11100(a) (limiting FINRA's authority to set ex-dates to "over-the-counter secondary market transactions in securities").  Because FINRA must follow its SEC-approved rules and the declaratory relief B.E. Capital requests would violate the SEC-approved limitations on FINRA ex-date authority, the claim against FINRA fails as a matter of law.  *See* 15 U.S.C. § 78s(g)(1) ("Every self-regulatory organization shall comply with the provisions of this chapter, the rules and regulations thereunder, and its own rules … .").

## CONCLUSION

For all of the foregoing reasons, the Court should dismiss the claim against FINRA with prejudice under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

HEYMAN ENERIO
GATTUSO & HIRZEL LLP

*/s/ Dominick T. Gattuso*
Dominick T. Gattuso (# 3630)
300 Delaware Ave., Suite 200
Wilmington, DE 19801
(302) 472-7300
Email:  dgattuso@hegh.law

*Attorneys for Defendant
Financial Industry Regulatory Authority, Inc.*

Of Counsel:

Douglas W. Henkin
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, New York 10112-4498
(212) 408-2520
douglas.henkin@bakerbotts.com

J. Mark Little
BAKER BOTTS L.L.P.
One Shell Plaza
910 Louisiana Street
Houston, TX  77002-4992
(713) 229-1489
mark.little@bakerbotts.com

Dated:  April 25, 2017

14