**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| B.E. CAPITAL MANAGEMENT FUND LP, on behalf of itself and all others similarly situated,<br><br>               Plaintiff,<br><br>  - against -<br><br>FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC. and THE DEPOSITORY TRUST COMPANY,<br><br>               Defendants. | Case No. 17-311 GMS |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF
PLAINTIFF'S PRELIMINARY INJUNCTION MOTION AND IN
<u>OPPOSITION TO DTC'S CROSS-MOTION TO DISMISS</u>**

                                                        KLEIN LLC
                                                        Julia B. Klein (DE 5198)
                                                        919 North Market Street
                                                        Suite 600
                                                        Wilmington, Delaware 19801
                                                        (302) 438-0456
                                                       klein@kleinllc.com

                                                        *Counsel for Plaintiff*
                                                        *and the Putative Class*

Dated: May 29, 2017
        Wilmington, Delaware

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 4

I. PLAINTIFF INCORPORATES BY REFERENCE ITS RESPONSE TO FINRA ARGUMENTS ADOPTED BY DTC ................................................................... 4

II. THE COMPLAINT ADEQUATELY PLEADS DTC VIOLATED ITS RULES AND PROCEDURES BY SETTING AN UNOFFICIAL EX-DATE, AND THE WRONG ONE AT THAT ................................................................................................... 5

III. PLAINTIFF IS ENTITLED TO PRELIMINARY RELIEF, EVEN IF ITS CLAIM AGAINST DTC IS DISMISSED ................................................................................ 7

    A. Plaintiff is Entitled to Preliminary Relief ............................................................. 7

    B. Even if Plaintiff's Claim Against DTC is Dismissed, Plaintiff is Entitled to Relief Against it under Rule 65(d)(2) ................................................................. 7

CONCLUSION ............................................................................................................................. 8

# TABLE OF AUTHORITIES

**Cases**

*Block v. Prudential-Bache Sec.*, 707 F. Supp. 189 (W.D. Pa. 1989) .............................................. 4

*Gallier v. Woodbury Fin. Servs.*, No. 14-cv-888, 2015 U.S. Dist. LEXIS 35675, 2015 WL 129635 (S.D. Tex. Mar. 23, 2015) ........................................................................................ 4

**Statutes**

17 CFR 240.10b-17 .......................................................................................................................... 2

Fed. R. Civ. P. 65 ................................................................................................................... i, 3, 7

**Other Authorities**

NASD Notice to Members 00-54 .................................................................................................. 2

**Rules**

FINRA Rule 11140 ............................................................................................................ 3, 5, 6, 8

Plaintiff B.E. Capital Management Fund LP, on behalf of itself and all others similarly situated, submits this memorandum of law in further support of its motion for preliminary relief, and in opposition to DTC's cross-motion to dismiss (the "DTC Brief") [D.I. 15].[1]

### PRELIMINARY STATEMENT

Its efforts to pull the rug out from under this action regrettably led DTC to spill a lot of ink on misconstruing the record. For instance, Mr. Coleman in his confirmation objection argued the Plan's distribution scheme is inconsistent with FINRA Rules, the exact opposite of what Plaintiff asserts. Consequently, the relief sought herein is not "the precise issue . . . considered and rejected by the Bankruptcy Court[,]" DTC Brief p. 10, and is neither *res judicata* nor barred by the doctrine of issue preclusion. It likewise is incorrect that "Plaintiff alleges that DTC should not have used the Distribution Record Date in allocating the Initial Equity Distribution[.]" *Id*. p. 3. Plaintiff alleged no such thing. To the contrary, it alleged distributions to holders of shares as of the Distribution Record Date are entirely consistent with FINRA Rules. Complaint ¶ 17 ("The distribution is paid by DTC first to record date shareholders."); PI Motion p. 8 ("Nothing would prohibit the Liquidating Trustee from making a future distribution to shareholders as of the Distribution Record Date . . ."). Nor has "FINRA . . . demonstrated that it is absolutely immune from the claims asserted against it in this action." DTC Brief p. 3. This statement may reflect DTC's wishful thinking, but not the present state of affairs.

DTC further argues that, because it has no authority to set an official ex-date under its own Operational Arrangements, and responsibility for setting such dates for distributions on account of OTC securities falls squarely with FINRA's prerogatives and duties, it was precluded from setting

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to them in the Complaint or Plaintiff's memorandum of law in support of its motion for a preliminary injunction (the "PI Motion").

1

an ex-date for the initial distribution and will be precluded from doing so for any future distribution as to which FINRA does not set an ex-date.

That argument, however, is based on the false premise that an ex-date must be determined by FINRA (in the case of securities that trade OTC) or by an exchange (in the case of securities that do not) in order to qualify as an ex-date. NASD Notice to Members 00-54 and DTC's Service Guides and Operational Arrangements provide otherwise and defines "ex-date" as the date on and after which a security trades ex-dividend (without dividend), as described below, *without regard to who determines the date*. Accordingly, an entity sets an ex-date whenever it determines which shareholders do or do not receive a distribution, regardless of whether the determination is made by FINRA or DTC, and regardless of whether the determination is made in accordance with the FINRA Rules.

In the instant case, someone *clearly* determined which shareholders would receive the initial distribution and which did not. *Someone* determined, *ex post facto*, hat anyone who had purchased shares after August 26 would not be entitled to a distribution, *i.e.*, that August 26 was be the ex-date for the initial distribution.**2** *See id*. p. 9 ("investors who purchased DNIB shares after August 26 . . . did not receive the distribution . . . DTC did not allocate the distribution to its Participants who purchased shares . . . after August 26"). There is no dispute the determination was not made by FINR, and that the Trustee clearly lacks the ability to make that determination.

---

[2] The practical consequence of this was that DNIB shares traded worthless for approximately 4.5 trading days. Investors who bought shares during those 4.5 days got totally hosed because they did not receive the required advance notice from FINRA that the shares would be trading ex-dividend after August 26, 2016. That someone had set an August 36 ex-date with respect to DNIB shares trading up until the Distribution Record Date did not become apparent until after the initial distribution was made several months later. Compliance with Rule 11140 and SEA Rule 10b-17 is mandatory precisely to prevent this kind of irregularity in the trading of public securities.

2

The only logical conclusion is that a *de facto* ex-date was set by DTC when it made the initial distribution, as alleged in the Complaint. Complaint ¶¶ 6, 36-38, 43, 46.

Given DTC's acknowledgment that its Operational Arrangements *prohibit* it from setting an ex-date, DTC plainly should not have made the initial distribution unless and until FINRA set such date. But short of DTC not making a distribution *at all* absent an ex-date set by FINRA, it should have made the initial distribution consistent it made with a Rule 11140(b)(2) ex-date because DTC's Distributions and Dividends Services Guides mandate application of interim accounting procedures where Rule 11140(b)(2) applies and DTC is required to follow such guides pursuant to DTC Rules 1 and 27. As a result, Plaintiff not only has pled a valid claim, but has a strong likelihood of success on the merits. Further, because DTC's opposition to preliminary relief hinges almost entirely on its likelihood of success on the merits, Plaintiff is also entitled to such relief.

Significantly, even if Plaintiff's declaratory judgment claim against DTC were dismissed, Plaintiff would still be entitled to preliminary relief against DTC based on its likelihood of success against FINRA. This Court has authority under Rule 65(d)(2)(B)-(C) of the Federal Rules of Civil Procedure to enjoin nonparties acting as an "agent" for another party, and "other persons who are in active concert or participation with" another party. In implementing Rule 11140(b), DTC undoubtedly acts as FINRA's agent and is in active concert or participation with FINRA.

**ARGUMENT**

I. **PLAINTIFF INCORPORATES BY REFERENCE ITS RESPONSE TO FINRA ARGUMENTS ADOPTED BY DTC**

Plaintiff incorporates herein the arguments in the PI Motion and memorandum of law in opposition to FINRA's motion ("FINRA Opposition") why this action is not precluded by virtue of Plaintiff not objecting to Plan confirmation or appealing the Confirmation Order and why the equitable mootness doctrine does not bar the instant suit. Plaintiff also incorporates its arguments from the FINRA Opposition that the self-regulatory organization ("SRO") immunity doctrine does not shield FINRA or DTC from this action, both because it does not bar declaratory judgment actions and because the SEC has made clear that the SRO immunity doctrine only applies when SROs are engaged in functions that materially relate to the regulation of the SRO's member (DTC's "participants," which do not include Plaintiff). Plaintiff further incorporates its argument from the FINRA Opposition that it may maintain a private right of action against SROs because it has no administrative remedy or other avenue for relief under the Exchange Act.

DTC relies on two decisions not cited by FINRA for the proposition that Plaintiff has no private right of action against SROs such as DTC: *Gallier v. Woodbury Fin. Servs.*, No. 14-cv-888, 2015 U.S. Dist. LEXIS 35675, 2015 WL 129635 (S.D. Tex. Mar. 23, 2015) and *Block v. Prudential-Bache Sec.*, 707 F. Supp. 189 (W.D. Pa. 1989). *Galler* is inapposite because it involved plaintiffs that had administrative remedies—the plaintiffs sued their financial advisor (not an SRO) in state court after losing a FINRA arbitration. In *Bloch*, the plaintiffs sued their broker over the sale of LP interests, and asserted a claim, as third-party beneficiary, against Prudential, for breach of Prudential's agreement to abide by NYSE and NASD Rules. Given the available of

administrative relief against brokers for violations of the FINRA Rules, that decision is likewise inapposite.

## II. THE COMPLAINT ADEQUATELY PLEADS DTC VIOLATED ITS RULES AND PROCEDURES BY SETTING AN UNOFFICIAL EX-DATE, AND THE WRONG ONE AT THAT

The crux of DTC's argument is that Plaintiff has not pled a valid claim, and does not have a likelihood of success on the merits, because DTC's Service Guides only contemplate application of interim accounting procedures where *FINRA* (not DTC) has set a post-record date ex-date. Consequently, according to DTC, DTC did not run afoul of DTC Rules 1 and 27 by making distributions to Distribution Record Date shareholders when it failed to apply interim accounting procedures. DTC Br. pp.14-17.

That argument, however, is based on the premise that interim accounting procedures only apply when FINRA sets an ex-date. That premise is a fallacy. The Service Guides provide as follows:

> **Interim Accounting Usage**
>
> Activation of DTC's Interim Accounting process depends on the type of distribution. The following table describes the conditions under which Interim Accounting takes place:
>
> | For | Interim accounting is used |
> |---|---|
> | Cash dividends | When the ex-date is not normal, and DTC is aware of the ex-date prior to the payable date. <br><br> In this case, the interim [accounting] period runs from record date+1 through close of business on ex-date+2. |

Klein Exs. 8–9.

Significantly, DTC's Service Guides do not define the term "ex-date" as that set by FINRA in accordance with Rule 11140(b) and transmitted to DTC. Rather, the Service Guides define the

5

term as "[t]he first date on which a security trades without the income distribution,"[3] and do not distinguish between an "official" ex-date set by FINRA, and an "unofficial" or *de facto* ex-date set by DTC by determining on its own which shareholders are entitled to a distribution in the absence of an official ex-date set by FINRA.

Moreover, the Service Guides state interim accounting procedures apply whenever the DTC "is aware" that "the ex-date is not normal" before it is too late to apply such procedures. Whether DTC is or is not aware of something is a question of fact not suitable for adjudication on a motion to dismiss. However, Plaintiff certainly pled that it is highly likely DTC *was* aware the ex-date for the initial distribution was "not normal" because, among other things, FINRA coded the distribution CD in its daily list notice, and DTC held the distribution for an entire five days before deciding not to apply interim accounting procedures. *See* Complaint ¶¶ 28, 34. At a minimum, DTC, now that this action has been brought, is aware the Rule 11140(b) ex-date for *future* distributions is *not* normal, for the reasons described in Plaintiff's moving papers: The next distribution likely will be the balance of the liquidating trust, and the balance of the liquidating trust ($18 million), when divided into the number of shares outstanding (20.88 million), equals $.86/share. This is much larger than 25% of the closing price on October 11, 2014, the last business day on which the Debtors' shares traded ($.15/share).

Given that interim accounting procedures should have been applied to the initial distribution and should be applied to any future distribution to shareholders, DTC simply is wrong that "the Interim Accounting service has no relevance" to the question of whether it violated its

---

[3] NASD Notice to Members 00-54 and DTC's Operational Arrangements are in accord. The former defines "ex-date" as "the date on or after which a security is traded without a specific dividend or distribution." Footnote 11 of the Operational Arrangements defines "ex-date" as "the date on which all shares purchased on or after such date will not receive the upcoming announced dividend."

6

own rules in setting a *de facto* ex-date. DTC Br. p. 15. The Interim Accounting service is relevant and, in fact, outcome-dispositive on Plaintiff's claim given that the Service Guides have the force of law under the Exchange Act. Accordingly, Plaintiff not only has pled a plausible claim but has a strong likelihood of success on the merits against DTC.

### III.  PLAINTIFF IS ENTITLED TO PRELIMINARY RELIEF, EVEN IF ITS CLAIM AGAINST DTC IS DISMISSED

#### A.  Plaintiff is Entitled to Preliminary Relief

Plaintiff explained in its moving papers why it satisfies the standard for obtaining preliminary relief. In opposing preliminary relief, DTC simply rehashes its erroneous position on the merits, DTC Br. p. 18, which is addressed above and is not relevant to the question of irreparable harm or the balance of harms. DTC's argument that irreparable harm is lacking likewise simply rehashes Defendants' position that Plaintiff's cause of action is *res judicata* and precluded, *id.*, which also is irrelevant to the inquiry. If this Court finds Plaintiff has a likelihood of success on the merits, Plaintiff also is entitled to preliminary relief for reasons described in the PI Motion.

#### B.  Even if Plaintiff's Claim Against DTC is Dismissed, Plaintiff is Entitled to Relief Against it under Rule 65(d)(2)

Even if this Court were to dismiss Plaintiff's claim against DTC, Plaintiff would still be entitled to preliminary relief pursuant to Rule 65(d)(2), based on its likelihood of success on the merits against FINRA. That Rule provides, in relevant part:

> ***Persons Bound.*** The order [granting a preliminary injunction] binds only the following who receive actual notice of it by personal service or otherwise:
>
> (A) the parties;
> (B) the parties' officers, agents, servants, employees, and attorneys; and
> (C) other persons who are in active concert or in participation with anyone described in Rule 65(d)(2)(A) or (B).

7

Although the term "agent" is not defined in the Rules, the term's dictionary definition includes "one who is authorized to act for or in the place of another" and "a computer application designed to automate certain tasks." *See* https://www.merriam-webster.com/dictionary/agent; *see also* Black's Law Dictionary (10th ed. 2014) (same). Because DTC is responsible for implementing an ex-date set by Rule 11140(b), it necessarily serves as FINRA's "agent" in making distributions to shareholders as of COB on the last business day on which shares traded prior to an ex-date set by FINRA. Moreover, the Service Guides make clear that the process is an automated one, designed to automate due bill processing that would otherwise need to be done manually (*see* heading "Without DTC's Interim Accounting"). *Cf.* DTC Brief p. 4 ("Utilizing automated systems for the "book-entry" (computerized) movement of interests in securities, DTC operates a centralized system for handing securities deposited at DTC") and p. 9 n.8 ("Securities generally do not change hands physically. DTC transfers ownership between broker/dealers' accounts by book-entry electronic movements.").

Moreover, because DTC is responsible for implementing FINRA's ex-date it is necessary acting "in active concert" and "in participation" with FINRA, a party herein, whenever FINRA sets or is supposed to set an ex-date in accordance with Rule 11140.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for preliminary relief should be granted, and DTC's cross-motion to dismiss should be denied.

| | |
|---|---|
| Dated: May 29, 2017<br>Wilmington, Delaware | Respectfully submitted,<br><br>KLEIN LLC<br><br>*/s/ Julia Klein*<br>Julia B. Klein (5198)<br>919 North Market Street |

8

Suite 600
Wilmington, Delaware 19801
(302) 438-0456
klein@kleinllc.com

*Counsel for Plaintiff
and the Putative Class*