**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| B.E. CAPITAL MANAGEMENT FUND LP, on behalf of itself and all others similarly situated,<br><br>               Plaintiff,<br><br>v.<br><br>FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC. and THE DEPOSITORY TRUST COMPANY,<br><br>               Defendants. | Case No. 17-00311 (GMS) |

**DEFENDANT FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.'S REPLY**
**BRIEF IN FURTHER SUPPORT OF THE MOTION TO DISMISS**

Of Counsel:

Douglas W. Henkin
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, New York 10112-4498
(212) 408-2520
douglas.henkin@bakerbotts.com

J. Mark Little
BAKER BOTTS L.L.P.
One Shell Plaza
910 Louisiana Street
Houston, TX  77002-4992
(713) 229-1489
mark.little@bakerbotts.com

Dated:  June 12, 2017

HEYMAN ENERIO
GATTUSO & HIRZEL LLP
Dominick T. Gattuso (# 3630)
300 Delaware Ave., Suite 200
Wilmington, DE 19801
(302) 472-7300
Email:  dgattuso@hegh.law

*Attorneys for Defendant*
*Financial Industry Regulatory Authority, Inc.*

TABLE OF CONTENTS

**Page**

Table of Contents ............................................................................................................. i

Table of Authorities ........................................................................................................ ii

Preliminary Statement ..................................................................................................... 1

Argument ......................................................................................................................... 2

    I.      B.E. Capital's Claim Against FINRA is Moot and Precluded By the Plan .......... 2

    II.     SRO Immunity Bars B.E. Capital's Claim Against FINRA ................................ 3

    III.    There Is No Private Right of Action To Force FINRA to Comply With Its Rules, And In Any Event FINRA Correctly Applied Rule 11140(b) Here .................... 7

Conclusion ...................................................................................................................... 9

TABLE OF AUTHORITIES

**Page(s)**

CASES

*D'Alessio v. New York Stock Exch., Inc.*,
  258 F.3d 93 (2d Cir. 2001)............................................................................................4

*Dexter v. Depository Trust & Clearing Corp.*,
  406 F. Supp. 2d 260 (S.D.N.Y. 2005).................................................................1, 3, 4, 5, 6

*DL Capital Group, LLC v. Nasdaq Stock Mkt., Inc.*,
  409 F.3d 93 (2d Cir. 2005).....................................................................................4, 5, 6

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410 (3d Cir. 1997)...................................................................................2, 8

*In re NYSE Specialists Sec. Litig.*,
  503 F.3d 89 (2d Cir. 2007)......................................................................................4, 6

*In re Series 7 Broker Qualification Exam Scoring Litig.*,
  548 F.3d 110 (D.C. Cir. 2008) .....................................................................................6

*North v. Smarsh, Inc.*,
  160 F. Supp. 3d 63 (D.D.C. 2015) .................................................................................5

*Sparta Surgical Corp. v. NASD*,
  159 F.3d 1209 (9th Cir. 1998) .....................................................................................6

*Standard Inv. Chartered, Inc. v. NASD*,
  637 F.3d 112 (2d Cir. 2011).......................................................................................6

RULES

Fed. R. Civ. P. 12(b)(1).........................................................................................1, 9

Fed. R. Civ. P. 12(b)(6).........................................................................................1, 9

FINRA Rule 11100(a)...........................................................................................3, 8

FINRA Rule 11140 ...................................................................................................7

FINRA respectfully submits this reply brief in further support of its motion to dismiss the claim against it with prejudice pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).[1]

## PRELIMINARY STATEMENT

B.E. Capital's opposition to FINRA's motion to dismiss is based on misstatements of law and fact. Perhaps its most glaring misstatement is its argument that SRO immunity does not apply because the Complaint seeks declaratory relief and setting or not setting an ex-date is not immune conduct. *See* Opposition Br. at 10-15. But the law is settled here: The proposed class in *Dexter v. Depository Trust & Clearing Corp.*, 406 F. Supp. 2d 260 (S.D.N.Y. 2005), *aff'd*, 219 Fed. App'x 91 (2d Cir. 2007), sought substantively identical declaratory relief and the courts held that SRO immunity applied. *Compare* Complaint, D.I. 1, *Dexter*, No. 1:04-CV-07510 (S.D.N.Y.) at 14 (asking the court to "[d]eclar[e] and determin[e] that plaintiff and the Class are the rightful recipients of their pro rata share of distributions from the Litigation Fund") *with* 406 F. Supp. 2d at 262-64 (holding that SRO immunity barred the claims).

B.E. Capital does not dispute FINRA's description of what happened in the Debtor's bankruptcy proceedings, and so those descriptions (and the judicial documents on which they are based) provide the only basis on which the Court can address the viability of the claim asserted against FINRA. The only things B.E. Capital tries to do in terms of factual "opposition" are to (i) rely on materials that are not part of the Complaint and thus cannot be considered, and (ii) dispute the meaning of the September 1 Daily List Notice. *E.g.,* Opposition Br. at 3-4. But its efforts fail entirely:

---

[1]     Capitalized terms not defined herein have the meaning set forth in Defendant Financial Industry Regulatory Authority, Inc.'s Opening Brief In Support Of The Motion To Dismiss (D.I. 11) ("Opening Br."). References to the Memorandum of Law in Opposition to FINRA's Motion to Dismiss (D.I. 17) are in the form "Opposition Br. at xx."

- B.E. Capital asserts: "[I]f share cancellation were an impediment to setting an ex-date, there would have been no reason to post the daily list notice for the initial distribution."  Opposition Br. at 2.  But FINRA's undisputed statement that "[d]istribution will not be quoted Ex by FINRA," with the direction to look to the Debtor's filings for further information, was a clear statement to the public that FINRA would not set an ex-date.[2]

- Worse still, B.E. Capital misstates what information was provided to FINRA: B.E. Capital asserts that FINRA was notified of the required distribution information, relying on Opposition Br. Ex. A.  *See* Opposition Br. at 4 n.2.  But as (i) that document shows on its face and (ii) *B.E. Capital admits two pages earlier in the same brief*, those communications were between the Debtor's representatives and DTC, *not* FINRA.  *See id.* at 2 ("*See* **Exhibit A** [email exchanges between DNIB's Liquidating Trustee and DTC … .]." (emphases in original)).  It thus would not support B.E. Capital's argument even if the Court could consider it.[3]

For the reasons set forth herein and in FINRA's Opening Brief, the Court should dismiss the claim against FINRA with prejudice:  None of the deficiencies in the claim against FINRA can be cured through amendment, as B.E. Capital has conceded by not even requesting leave to amend.

## ARGUMENT

### I.    B.E. Capital's Claim Against FINRA is Moot and Precluded By the Plan

As an initial matter, in opposing FINRA's mootness argument B.E. Capital relies heavily on its incorrect assertion that the Debtor's Trustee furnished information to FINRA prior to the

---

[2]    B.E. Capital's focus on the code "CD" in the Daily List (Opposition Br. at 2) is irrelevant.  As the Over-the-Counter Equities Daily List Users Guide clearly explains on page 5, when the "CD" code is present "[u]sers should reference the Eff/Ex-Date field for the actual Eff/Ex-Date *if applicable*."  *See* http://www.finra.org/sites/default/files/OTCE_Daily_List_User_Guide.pdf at 5 (emphasis added).  Thus the Users Guide itself contemplated that an ex-date might not be set by FINRA in every instance in which the "CD" code was used; the Daily List at issue here clearly stated that no ex-date would be set and, as contemplated by the Users Guide, did not contain an ex-date in the "Eff/Ex-Date" field, further confirming that FINRA was not setting one.

[3]    The Court should not consider B.E. Capital's Exhibit A because it was not discussed in or attached to the Complaint.  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1424-25 (3d Cir. 1997).

initial distribution.  Because that is false,[4] there is no basis for B.E. Capital's argument that its claim is not moot.

B.E. Capital's defense against mootness and preclusion becomes all the more illogical when considered in light of the facts that, as discussed in more detail in Part III, *infra*, (1) the plan's confirmation cancelled shares in the Debtor, Bankr. D.I. 354 at 48; Bankr. D.I. 415 at 48; Bankr. D.I. 457 at 21; (2) B.E. Capital admits that the shares stopped trading over-the-counter as of October 11, 2016 (Opposition Br. at 7); and (3) FINRA Rule 11100(a) limits FINRA's authority to set ex-dates to "over-the-counter secondary market transactions in securities."  B.E. Capital may not like the result, but FINRA has shown that it cannot set an ex-date now for shares that no longer exist and no longer trade.  And also as demonstrated in Part III, *infra*, B.E. Capital concedes that it had an opportunity to raise objections in the bankruptcy court process—indeed, it admits it was monitoring the bankruptcy—but *chose* not to.  Its claim is thus moot and precluded.

## II.     SRO Immunity Bars B.E. Capital's Claim Against FINRA

B.E. Capital's SRO immunity argument is hopelessly confused.  That is not entirely surprising when a plaintiff is confronted with a directly on-point case that defeats its claim as a matter of law, and that is exactly what *Dexter* is.  *Dexter* expressly held that NASD (FINRA's predecessor) "setting the ex-dividend date for the distribution in question" fell within "the core exercise of its regulatory functions" and therefore rendered it "immune from … suit."  406 F. Supp. 2d at 262-64.  In the face of this, B.E. Capital tries to ignore the elephant in the room, mentioning *Dexter* only to incorrectly claim that the "suit was properly dismissed because it

---

[4]      *Compare* Opposition Br. at 5 ("the Trustee furnished this information to FINRA prior to making the initial distribution") *with supra* at 2 (demonstrating that the communications B.E. Capital relies on were with DTC, not FINRA).

sought monetary damages." Opposition Br. at 13. *Dexter* was "properly dismissed" (*id.*), but not because of B.E. Capital's made-up monetary damages/declaratory relief distinction. The plaintiff in *Dexter* sought declaratory relief, indeed the very same declaratory relief B.E. Capital seeks here. *See* Complaint, D.I. 1, *Dexter*, No. 1:04-CV-07510 (S.D.N.Y.) at 14 (asking the court to "[d]eclar[e] and determin[e] that plaintiff and the Class are the rightful recipients of their pro rata share of distributions from the Litigation Fund").

More broadly, B.E. Capital's argument reveals a fundamental confusion about SRO immunity: There is no monetary damages/declaratory relief distinction in SRO immunity. The *conduct* SRO immunity covers is immune, regardless of the relief sought. *See generally D'Alessio v. New York Stock Exch., Inc.*, 258 F.3d 93, 105 (2d Cir. 2001) ("SRO … may be entitled to immunity from suit for *conduct* falling within the scope of the SRO's regulatory and general oversight functions" (emphasis added)); *DL Capital Group, LLC v. Nasdaq Stock Mkt., Inc.,* 409 F.3d 93, 99 (2d Cir. 2005) ("Because Nasdaq here engaged in *conduct* consistent with the quasi-governmental powers delegated to it by the NASD pursuant to the Exchange Act and the regulations and rules promulgated thereunder, Nasdaq and its officers are entitled to absolute immunity from plaintiff's suit … ." (emphasis added)). That is because the entire point of SRO immunity is to give SROs "breathing room to exercise their powers without fear that their discretionary decisions may engender endless litigation" that would become "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress in enacting the Exchange Act." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 97 (2d Cir. 2007) (citation omitted). In other words, SRO immunity prevents regulation by lawsuits, whether those lawsuits seek monetary damages or declaratory relief. Put differently, B.E. Capital's argument would reduce the application of SRO immunity to a mere pleading hurdle, which the courts have held is

not the law.  *See, e.g., DL Capital*, 409 F.3d at 98-99 (recognizing that courts must guard against allowing "the plaintiff (or plaintiff's counsel) … to concoct some claim … in order to try and circumvent the absolute immunity doctrine").

B.E. Capital's insistence that SRO immunity has the same limitations as sovereign immunity for state actors under the Administrative Procedures Act ("APA") changes nothing.  *See* Opposition Br. 10-12.  The APA does not apply to SROs because SROs are neither agencies nor state actors.  *See North v. Smarsh, Inc.*, 160 F. Supp. 3d 63, 78 (D.D.C. 2015) ("[T]he APA does not apply to SROs such as FINRA because FINRA is not an 'agency' within the meaning of the statute.").  They are a unique type of quasi-governmental entity that both wields regulatory power and operates with regulatory oversight.  *See DL Capital*, 409 F.3d at 95.  That unique status gives rise to a unique type of immunity, and, as discussed above, that immunity depends on the conduct that is challenged, not the relief that is sought.  It bears noting that B.E. Capital is unable to cite a single decision addressing SRO immunity through the APA lens it proposes, a telling omission.

Bereft of arguments of its own, B.E. Capital rests most of its argument on the SEC's amicus brief in *City of Providence v. BATS Global Markets, Inc.*, No. 15-3057 (2d Cir. Nov. 28, 2016) (Opposition Br. at 12-14), blowing that amicus brief well out of proportion.  The most obvious example is B.E. Capital's assertion that "the SEC rejected … *dicta* from the District Court's decision in *Dexter*."  Opposition Br. at 13.  It is not surprising that no citation supports that assertion, because <u>the SEC's amicus brief does not even cite *Dexter*</u>.  The issue in *City of Providence* is whether certain conduct by SROs that does not involve setting ex-dates falls within the scope of SRO immunity, which is not the issue here, and the SEC's arguments must thus be read in the specific context of that case.  There is thus no need to parse through those arguments at all because at best it would set up a choice between (i) arguments in an amicus brief

5

filed in a case having nothing to do with setting ex-dates and (ii) an express holding in an on-all-fours court opinion about setting ex-dates (*Dexter*).  There is no real choice there.

The SEC's amicus brief is also of no moment because decades of settled SRO immunity precedent make clear that SRO immunity extends well beyond the realm of member regulation. *See generally Standard Inv. Chartered, Inc. v. NASD*, 637 F.3d 112, 115 (2d Cir. 2011) (per curiam) ("no question that an SRO and its officers are entitled to absolute immunity from private damages suits *in connection with the discharge of their regulatory responsibilities*" (emphasis added)); *In re Series 7 Broker Qualification Exam Scoring Litig.*, 548 F.3d 110, 113 (D.C. Cir. 2008) (SRO immunity applies to claims "based on duties arising under the Exchange Act"); *Sparta Surgical Corp. v. NASD*, 159 F.3d 1209, 1213 (9th Cir. 1998) ("[A] self-regulatory organization is immune from liability based on the discharge of its duties under the Exchange Act."), *abrogated in part on other grounds by Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 136 S. Ct. 1564 (2016).  Those decisions carefully considered and rebuffed several efforts to circumscribe the scope of the immunity SROs have "when they engage in conduct consistent with the quasi-governmental powers delegated to them pursuant to the Securities Exchange Act of 1934 and the regulations and rules promulgated thereunder."  *DL Capital*, 409 F.3d at 94, 99; *see also NYSE Specialists,* 503 F.3d at 97 (rejecting attempt "to cabin" SRO immunity).  They describe the scope of SRO immunity in precisely the way FINRA describes it here and the court applied it in *Dexter*.

In sum, B.E. Capital's immunity argument fails on all levels.  It has no answer for *Dexter*'s express holding that the conduct about which B.E. Capital complains is immune, which alone should end the matter.  It reveals a fundamental misunderstanding of SRO immunity as a doctrine.  And it relies heavily on an SEC amicus brief filed in a case that has no similarities to

this one, while at the same time refusing to recognize the decades of settled SRO precedent against its position.  Thus, B.E. Capital has not mounted any viable defense to the clear application of SRO immunity here.

### III.   There Is No Private Right of Action To Force FINRA to Comply With Its Rules, And In Any Event FINRA Correctly Applied Rule 11140(b) Here

B.E. Capital does not deny that its entire case consists of allegations that FINRA violated its ex-date rule regarding the initial distribution and will violate the rule again for future distributions absent judicial action.  To get around the clear case law holding that there is no private right of action to enforce SRO rules, B.E. Capital asserts that those cases are inapposite because B.E. Capital "has no administrative *or other* remedy against FINRA ... ."  Opposition Br. at 15-16 (emphasis added).

The fundamental premise of that argument is wrong, as the record here clearly shows, because B.E. Capital could have raised this issue in the bankruptcy court.  Indeed, another investor argued to the bankruptcy court that FINRA should have set an ex-date that would have resulted in B.E. Capital sharing in distributions with respect to shares purchased after the Distribution Record Date.  *See* Bankr. D.I. 445 at 9:22-16:6 & 18:16-48:22; D.I. 4-12 at 292-94. Notably, B.E. Capital does not deny that had that objection prevailed, it would have received the relief it seeks here.  And although it tries to assert that the issue before the bankruptcy court was not the same, B.E. Capital ends its argument with a fatal concession:  In denying that confirmation should have any preclusive effect, B.E. Capital states that it "did not join in the confirmation objection or appeal the Confirmation Order *because it disagreed with the objection's premise and did not believe the Confirmation Order presented any appealable issues*."  Opposition Br. at 10 (emphasis added).  The inescapable conclusions from that statement are that B.E. Capital knew about the bankruptcy proceeding, monitored it, knew that it

could have objected to the Debtor's plan, knew about this specific objection and had a view regarding its accuracy, and knew that there was a right to appeal from confirmation (and in particular from the resolution of this objection). Thus, B.E. Capital had several remedies available to it, and its admitted *choice* not to use any of them disposes of its argument that it needs a private right of action because there was supposedly no other remedy available to it. B.E. Capital *chose* not to make itself heard in the bankruptcy case and then lost the bet it made on the outcome of that case; those choices do got give rise to a cause of action.

Finally, B.E. Capital argues that FINRA can set an ex-date now because "[t]he shares still exist as a technical matter" even though the Debtor's plan canceled them. *See* Opposition Br. at 7. B.E. Capital makes two sets of assertions in support of this argument. Neither argument has merit.

- On the one hand, B.E. Capital asserts that the Debtor's shares still "exist" because they still appear on B.E. Capital's brokerage account statements and it received offers to purchase the shares after October 11, 2016. *See id.* *First*, neither allegation is in the Complaint, and so they cannot be considered here. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1424-25. *Second*, B.E. Capital offers no authority that could explain how either assertion could possibly override the clear, plain, and *final and unappealed* judicial decision canceling the Debtor's shares. *See* Bankr. D.I. 415 at 48 ("On the Effective Date, all BIND Equity Interests shall be canceled."); FINRA UPC #52-16 (announcing cancellation of the Debtor's shares and removal of the BINDQ symbol from trading) (Opening Br. Exhibit C).

- On the other hand, B.E. Capital asserts that the cancellation of the shares was a "legal fiction" (which it does not explain) that did not affect the right to receive distributions under the Debtor's plan. *See* Opposition Br. at 7. Although it is true that the cancellation of the shares did not affect rights to receive distributions, that has nothing to do with whether the shares ceased trading publicly after being canceled. B.E. Capital concedes that is what happened, and FINRA's rules do not allow it to set ex-dates for shares that do not trade over-the-counter. *Compare* Opposition Br. at 7 ("even though they ceased trading OTC [over-the-counter] on October 11") *with* FINRA Rule 11100(a) (limiting FINRA's authority to set ex-dates to "over-the-counter secondary market transactions in securities").

8

None of these arguments are sufficient to overcome the cancellation of the shares, their removal from public trading, and the fact that FINRA can only set ex-dates for shares that trade publicly.

CONCLUSION

For all of the foregoing reasons and those set forth in FINRA's Opening Brief, the Court should dismiss the claim against FINRA with prejudice under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

Of Counsel:

Douglas W. Henkin
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, New York 10112-4498
(212) 408-2520
douglas.henkin@bakerbotts.com

J. Mark Little
BAKER BOTTS L.L.P.
One Shell Plaza
910 Louisiana Street
Houston, TX  77002-4992
(713) 229-1489
mark.little@bakerbotts.com

Dated:  June 12, 2017

HEYMAN ENERIO
GATTUSO & HIRZEL LLP

*/s/ Dominick T. Gattuso*
Dominick T. Gattuso (# 3630)
300 Delaware Ave., Suite 200
Wilmington, DE 19801
(302) 472-7300
Email:  dgattuso@hegh.law

*Attorneys for Defendant*
*Financial Industry Regulatory Authority, Inc.*