IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| B.E. CAPITAL MANAGEMENT FUND LP, on behalf of itself and all others similarly situated,<br><br>            Plaintiff,<br><br>    v.<br><br>FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC. and THE DEPOSITORY TRUST COMPANY,<br><br>            Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. 17-00311 (GMS)<br>)<br>)<br>)<br>)<br>)<br>) |

**REPLY BRIEF OF DEFENDANT THE DEPOSITORY TRUST COMPANY
<u>IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT</u>**

                       MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                       R. Judson Scaggs, Jr. (#2676)
                       Donna L. Culver (#2983)
                       1201 N. Market Street
                       P.O. Box 1347
                       Wilmington, DE 19899-1347
                       (302) 658-9200
                       rjscaggs@mnat.com
                       dculver@mnat.com
                          *Attorneys for Defendant*
                          *The Depository Trust Company*

OF COUNSEL:

Gregg M. Mashberg
Proskauer Rose LLP
Eleven Times Square
New York, NY 10036-8299

June 12, 2017

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ...............................................................................................1

ARGUMENT ..............................................................................................................................1

    I.    PLAINTIFF HAS FAILED TO STATE A CLAIM THAT DTC VIOLATED ITS OWN SEC-APPROVED RULES. ...............................................2

    II.   PLAINTIFF IS NOT ENTITLED TO A PRELIMINARY INJUNCTION AGAINST DTC. .................................................................................5

CONCLUSION ...........................................................................................................................7

## TABLE OF AUTHORITIES

Page(s)

Cases

*Bloch v. Pru-Bache Sec.*,
    707 F. Supp. 189 (W.D. Pa. 1989)...........................................................................................5

*Gallier v. Woodbury Fin. Serv., Inc.*,
    2015 U.S. Dist. LEXIS 35675 (S.D. Tex. March 23, 2015).......................................................5

Rules and Statutes

UCC § 8-115 .................................................................................................................................6

UPC Rule 11140(a).......................................................................................................................6

UPC Rule 11140(b).......................................................................................................................6

PRELIMINARY STATEMENT

DTC respectfully submits this reply brief in further support of its motion to dismiss the Complaint.[1] For the reasons stated below, there is no merit to Plaintiff's claims and the Complaint should be dismissed.

ARGUMENT

There are three principal arguments underlying DTC's motion to dismiss: (1) DTC is immune from Plaintiff's claims in this action; (2) Plaintiff's claims are moot; and (3) Plaintiff has failed to state a claim that DTC has violated its Rules.

DTC's positions with respect to SRO immunity and mootness, parallel FINRA's arguments. To avoid submitting duplicative papers to the Court, DTC hereby incorporates by reference the applicable portions of FINRA's reply brief[2], and refers the Court to DTC's moving papers[3] for its reply on these points. Accordingly, this brief will focus on Plaintiff's claim that DTC violated its own rules and its request for a preliminary injunction, even if the Court dismisses the Complaint as against DTC, as it must.

---

[1] Capitalized terms not otherwise defined herein have the meaning set forth in DTC's "Answering Brief in Opposition to Plaintiffs' Motion for a Preliminary Injunction and in Support of its Cross-Motion to Dismiss," filed April 24, 2017 (D.I. 15) ("DTC's Brief" or "DTC Br."). Plaintiff's Memorandum of Law in Further Support of Plaintiff's Preliminary Injunction Motion and in Opposition to DTC's Cross-Motion to Dismiss, filed May 29, 2017 (D.I. 17) is referred to as "Pl. Ans. Mem." FINRA's Reply Brief in "Further Support of the Motion to Dismiss," dated June 12, 2017, (D.I. 20) is referred to as "FINRA Reply Br."

[2] *See* FINRA Reply. Br. at 3-7 (SRO immunity); *id.* at 1-3, 7-8 (mootness).

[3] *See* DTC Br. at 12-14 (DTC is immune from Plaintiff's claims); *id* at 2, 10, 12 (Plaintiff's claims are moot).

I.          **PLAINTIFF HAS FAILED TO STATE A CLAIM THAT DTC <u>VIOLATED ITS OWN SEC-APPROVED RULES.</u>**

Plaintiff's argument that DTC violated its own Rules because it failed to establish a late ex-date and implement its Interim Accounting Procedures is premised on a proverbial house of cards. The argument is built on the fiction that DTC set an "unofficial," or "informal" or "de facto" ex-date (Pl. Ans. Mem. at 5-7) and, having done so – and done so erroneously – the Court should order DTC to set a new ex-date, one to the Plaintiff's liking. Plaintiff's new ex-date, of course, would rescue the investment strategy that Plaintiff pursued in contravention of the literal language of the Plan: *i.e.,* Plaintiff's gambit that it could purchase DNIB shares *after* the August 30 record date and still receive the dividend – despite the express language to the contrary in the Plan and DNIB's Form 8-K (DTC Br. at 1-2):

> Under the Plan of Liquidation, only stockholders of record as of the close of business on August 30, 2016 (the "Distribution Record Date") are entitled to payment as part of the initial cash distribution or any subsequent cash distribution(s) that may occur pursuant to the Plan of Liquidation. Any person who purportedly purchases or purportedly is transferred the Company's common stock subsequent to the Distribution Record Date will not be entitled to payment as part of the initial cash distribution or any subsequent cash distribution(s) if the Plan of Liquidation is confirmed by the Bankruptcy Court.

The cards collapse with the slightest breeze of reality. First, the concept of an "informal" or "de facto" ex-date is pure invention. Plaintiff cites nothing in DTC's Rules nor any other authority to support this artifice and, indeed, there is nothing. The concept simply does not exist. As an SRO, DTC can only operate pursuant to its SEC-approved Rules, and its Rules give it no authority to set an ex-date of any kind. DTC Br. at 4, 6-7, 14-15. If anything, by inventing the concept of an "informal" or "de facto" ex-date, Plaintiff is admitting that DTC did not set an ex-date.

Nor is there any plausible factual basis for the artifice that DTC set an "informal" or "de facto" ex-date. In its moving papers, DTC explained that investors who purchased DNIB shares between August 26 and August 30, inclusive, did not receive the dividend through the DTC settlement system because of the operation of the T+3 settlement process – not because DTC had established some sort of ex-date as of August 26. DTC Br. at 9 and n. 8. Quite simply, because it takes three days after the trade date for the trade to settle at DTC, DNIB shares purchased on August 26, 29 and 30 (August 27 and 28 were a weekend) would not have been recorded in the DTC accounts of DTC's purchasing Participants, until three days after the trade date; *i.e.*, September 1, 2 and 3, respectively, all *after* the August 30 record date. Because DTC followed the provision of the Plan that provided that holders as of the Distribution Record Date would receive the allocation (DTC Br. at 1-2), DTC could not, and did not, allocate the dividend to those of its Participants whose purchases of DNIB shares had not settled and were not showing on DTC's books by August 30. This had nothing to do with any ex-date, real, imagined, de facto or otherwise. It is simply the way the settlement system works. The fact that when an exchange (or FINRA) sets an ex-date it commonly comports with the T+3 settlement system (but not always), does not mean that when, as here, FINRA did not set an ex-date that the T+3 system does not continue to operate normally.

Obviously unable to refute the basic operation of the securities settlement process that explains why allocation of the distribution had nothing to do with an ex-date, Plaintiff simply ignores DTC's explanation. Plaintiff's answering papers contain *not one word* about T+3. Plaintiff simply repeats its unsupported and unsupportable arguments that DTC did set some sort of faux ex-date.

What must also be emphasized in this context is the attenuated nature of Plaintiff's ex-date argument. Plaintiff alleges, erroneously, that DTC set an informal or de facto ex-date of August 26, not because Plaintiff made its purchase within three days prior to the August 30 record date and, therefore, arguably should have been recognized as a holder on the record date. That is not what Plaintiff is arguing. Plaintiff admits that it made its purchase on September 1 – *after* the record date. Plaintiff's August 26 record date argument is offered essentially as circumstantial evidence that DTC is in the (informal/de facto) ex-date setting business and the Court is therefore free to direct DTC to set a different ex-date – one that would include Plaintiff in the distribution, contrary to the terms of the Plan. As noted above, however, none of this has any basis in DTC's Rules, SEC Rules, securities statutory law, case law, securities industry practice or otherwise. The argument cannot satisfy the plausibility standard that governs the Complaint. *See* DTC Br. at 9, 11.

With the collapse of its "informal" ex-date argument, there is no predicate for Plaintiff's assertion that DTC violated its Rules by not having implemented its Interim Accounting procedures (Pl. Ans. Mem. at 6) – which only come into play when an ex-date is set by an exchange or FINRA (DTC. Br. at 15). Plaintiff's Interim Accounting and circular "not normal" ex-date arguments thus miss the point completely. Because, as Plaintiff admits, FINRA never set an ex-date (VC ¶¶ 4, 33, 38), DTC has no authority under its Rules to set one (DTC Br. at 6-7), and the distribution was processed without one (*supra* at 4-5)[4], Plaintiff's arguments are devoid of any foundation.

---

[4] Plaintiff's "not normal ex-date" argument is circular because the concept is based on the *existence* of an ex-date, which never happened here. *See* Pl. Ans. Mem. at 5, quoting DTC Service Guide ("When the *ex-date* is not normal and DTC is aware of the *ex-date* prior to the payable date" (emphasis added)).

Finally, beyond the fact that Plaintiff has not identified any DTC Rule that DTC could have violated by not setting an ex-date, no less one that would serve Plaintiff's interests, even if there were such a rule, the law is clear that there is no private right of action to charge an SRO with violating its own rules. DTC Br. at 16-17. Plaintiff's only response is to attempt to distinguish two of the cases cited by arguing that in those cases the plaintiffs had alternative administrative remedies. Pl. Ans. Mem. at 4-5, citing *Gallier v. Woodbury Fin. Serv., Inc.*, 2015 U.S. Dist. LEXIS 35675 (S.D. Tex. March 23, 2015) and *Bloch v. Pru-Bache Sec.*, 707 F. Supp. 189, 195-96 (W.D. Pa. 1989). Even if *Gallier* and *Bloch* were factually distinguishable on these grounds, this would be a classic distinction without a difference. Irrespective of the availability of any arguable administrative remedies, both cases stand for the unequivocal proposition that a third party may not sue an SRO for allegedly violating its own rules. *See Gallier* 2015 U.S. Dist. LEXIS 35675 at *18 ("As noted, there is no private cause of action allowing a customer to sue a FINRA member on the basis that they violated the FINRA rules"), and *Bloch*, 707 F. Supp. at 195-96 ("Third party enforcement of the rules of a self-regulatory organization has been considered and rejected in this district.").[5] Nothing in case law, rules, or statutes indicates that persons who lacked administrative remedies are provided a private cause of action against an SRO. Likewise, nothing limits SRO immunity to situations where plaintiffs have administrative remedies. Plaintiff has no viable claim against DTC.

II. PLAINTIFF IS NOT ENTITLED TO A PRELIMINARY INJUNCTION AGAINST DTC.

Plaintiff's argument that it is entitled to a preliminary injunction against DTC even if the Complaint is dismissed is baseless. In the first instance, Plaintiff's reply fails to

---

[5] Moreover, as FINRA demonstrates in its reply brief, Plaintiff did indeed have a potential remedy in Bankruptcy Court which, if pursued successfully, would have afforded it the relief it now seeks here. FINRA Reply Br. at 7-8.

address DTC's arguments that Plaintiff has failed to satisfy the elements for awarding a preliminary injunction in this Circuit. *See* DTC Br. at 17-19. Instead, and citing no authority, Plaintiff hinges its argument on the facially erroneous premise that DTC is "implementing an ex-date pursuant to Rule 11140(b)" and "necessarily serves as FINRA's agent in making distributions to shareholders . . . ." Pl. Ans. Mem. at 8. Not only is this agency claim nowhere to be found in the Complaint or in Plaintiff's moving papers, Plaintiff fails to address the standards for establishing an agency relationship under applicable law.[6] Moreover, Plaintiff's agency argument, along with its "acting in active concert" claim, is yet again premised on the erroneous notion that "FINRA set[] or was supposed to set an ex-date in accordance with Rule 11140(a)." *Id.* That, of course, never happened, nor was it "supposed to." *See* FINRA Mem. at 5; FINRA Reply Br. at 3, 8-9 ("FINRA only sets ex-dates for shares that trade publicly.").

---

[6] Plaintiff's agency claim is in stark conflict with UCC Article 8: "[T]his section embodies one of the fundamental principles of the Article 8 indirect holding system rules – that a securities intermediary [DTC] owes duties only to its own entitlement holders [its Participants]." UCC § 8-115 OFF. CMT. 4.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in its opening brief, DTC's motion to dismiss should be granted with prejudice and Plaintiff's motion for a preliminary injunction should be denied.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Donna L. Culver*
R. Judson Scaggs, Jr. (#2676)
Donna L. Culver (#2983)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
rjscaggs@mnat.com
dculver@mnat.com

*Attorneys for Defendant
The Depository Trust Company*

OF COUNSEL:

Gregg M. Mashberg
Proskauer Rose LLP
Eleven Times Square
New York, NY 10036-8299

June 12, 2017
11093582.2